UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANDREW HAMRICK,                    :
                                   :    NO: 1:05-CV-00509
          Plaintiff,               :
                                   :
          v.                       :    **OPINION AND ORDER**
                                   :
WEST CLERMONT LOCAL SCHOOL         :
DISTRICT, et al.,                  :
                                   :
          Defendants.              :


          This matter is before the Court on Defendant West
Clermont Local School District's Motion to Dismiss (doc. 3), the
Motion to Dismiss of Defendants Union Township and Kenneth Geis
(doc. 4), Plaintiff's Responses in opposition (docs. 5, 8), and
Defendants' Replies (docs. 9, 12).  For the reasons indicated
herein, the Court GRANTS Defendants' Motions to Dismiss and
DISMISSES this matter from the Court's docket.

**I.  Background**

          Between 1989 and 1997, Union Township, Ohio, employed
Plaintiff as a police officer (doc. 8).  During the period of his
employment, Plaintiff and several of his colleagues filed a lawsuit
against Union Township, Union Township Administrator Kenneth Geis,
and others, alleging sex discrimination and retaliation during
their employment (Id.).  In early 1999, Plaintiff admitted in
depositions taken in preparation for such lawsuit that he had

planned to kill Mr. Geis and had told people about this plan (doc. 4).  Plaintiff testified as follows, in response to the line of questioning:[1]

> Q.  Now let me see if I got this straight.  You are suicidal looking to hurt someone if they say the wrong thing and you go from Samson's to Keaton's house, true?
> A.  It is not just anyone.  It was someone from Union Township in a supervisory position that I would hurt.
> Q.  Oh, so you wouldn't just hurt anybody willy-nilly?
> A.  No.
> Q.  Just one of them?
> A.  Yes.

(Id.) (quoting Hamrick Dep., Vol. IV, p. 113:3-14.)

He continued.

> Q.  As of January 29, 1997, had you told anyone that you were  going to kill someone?
> A.  Yes.
> Q.  And who had you told you were going to kill someone?
> A.  Kay Cook.
> Q.  And who was it that you told Kay Cook you were going to kill?
> A.  Mr. Geis.
> . . .
> Q. Sir is it your testimony that the only person you ever told that you wanted to kill Ken Geis was Kay Cook?
> A. No.
> Q. You told other people you wanted to kill Mr. Geis, didn't you?
> A. Yes.
> Q. Tell me all the people you told that you wanted to kill Mr. Geis.
> A. I don't remember.

(Id.) (quoting Hamrick Dep., Vol V, pp. 77:7-78:18, Vol VI, pp.

---

[1] The Court finds Defendants' argument well-taken that the deposition transcript attached to the Motion to Dismiss of Union Township and Kenneth Geis (doc. 4) should be considered part of the pleadings, as it is central to Plaintiff's claims.  Weiner v. Klais and Company, Inc., 108 F.3d 86, 89 (6th Cir. 1997).

82:10-83:24.)

Plaintiff even admitted that he told at least one person about the method he would use to kill Mr. Geis.

> Q. And you reported to Ms. Cook that you were going to kill Mr. Geis because he had recommended you be fired for the two previous offenses that you told her about on the 12th of December, true?
> A. Yes.
> . . .
> Q. Now you told her the plan you envisioned was that you were going to go out and buy a rifle, right?
> A. Yes.
> Q. And then you were going to go out and you were going to rent a car?
> A. Yes.
> Q. And then you were going to sniper him?
> A. Yes.
> Q. While he was at home?
> A. Yes.

(Id. quoting Hamrick Dep., Vol VI, pp. 103:6-107:8).

In November 2001, the parties settled the lawsuit brought by Plaintiff and the other employees (doc. 8). About two years later, in September 2003, Defendant West Clermont Local School District ("West Clermont") hired Plaintiff as a substitute teacher (Id.). Shortly thereafter, the individual Defendants in this action, Michael Burns, a former assistant Chief of the Union Township Police Department and current employee of West Clermont; Elaine Burns, the spouse of Michael Burns and also an employee of West Clermont; and Kenneth Geis; all allegedly informed representatives of West Clermont that Plaintiff had "threatened and plotted to kill Ken Geis" (doc. 1). Subsequently, the Defendant District removed Plaintiff from the list of eligible substitute

3

teachers, effectively terminating his employment (doc. 8).

On July 29, 2005, Plaintiff filed the present lawsuit alleging in a five-count Complaint that 1) the individual Defendants violated his rights under Title VII of the Civil Rights Act of 1991 and Ohio Revised Code 4112.99 to be free from acts of retaliation for participation in proceedings opposing acts of discrimination, 2) that the individual Defendants and Union Township defamed him, 3) that the actions taken by West Clermont constitute disability discrimination based on their perception of him as disabled, 4) that West Clermont violated Ohio public policy against disability discrimination, and 5) that the individual Defendants and Union Township tortiously interfered with Plaintiff's contractual, business, and/or employment relationships with West Clermont. Defendants brought their respective motions to dismiss in November 2005, arguing that Plaintiff's Complaint should be dismissed for failure to state any actionable claims.

On February 15, 2006, Plaintiff filed a motion for leave to file a Second Amended Complaint, which the Court granted on March 16, 2006 (doc. 17). The Second Amended Complaint essentially reframed the original five counts as seven counts, added a new count pursuant to 42 U.S.C. § 1983, and included a right to sue letter, but did not substantively change the issues before the Court (doc. 16). The Defendants filed notice on April 7, 2006, that they rely on the Original Motions to Dismiss to challenge the Second Amended

4

Complaint (doc. 19).

## II.  The Motion to Dismiss Standard

Plaintiff's Motion is governed by Fed. R. Civ. P 12(b)(6). A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint.  The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which states that, a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236,  94 S.Ct. 1683, 1687 (1974). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957).  A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in Jones v. Sherrill, 827 F.2d 1102, 1103 (6th Cir. 1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint.  Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983), cert. denied, 469 U.S. 826 (1984).  The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief.  Id. at 158; Conley v. Gibson, 355 U.S. 41 (1957).

Jones, 824 F.2d at 1103.

5

The admonishment to liberally construe the claim, in this case, a set of counterclaims, when evaluating a Rule 12(b)(6) dismissal, does not relieve the pleader of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1985) (quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981), cert. dismissed, 462 U.S. 1125 (1983)); see also Sutliffe, Inc. v. Donovan Companies, Inc., 727 F.2d 648, 654 (7th Cir. 1984); Wright, Miller & Cooper, Federal Practice and Procedure: § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

## III. Discussion

### A. Plaintiff's Claims Against West Clermont Local School District Disability Discrimination

The ADA, Ohio Rev. Code § 4112, and Ohio public policy prohibit discrimination against disabled individuals with respect to all terms and conditions of employment.  <u>See</u> 42 U.S.C. § 12112(a). A plaintiff can plead a <u>prima</u> <u>facie</u> case for disability discrimination by alleging 1) he was disabled within the meaning of the act, 2) he was a qualified person, 3) he suffered an adverse employment condition with regard to the position in question, and 4) a non-disabled person was selected as a replacement. <u>Kocsis v. Multi-Care Management Inc</u>. 97 F.3d 876 (6th Cir. 1996). Plaintiff can meet the disability prong in any of three ways: if he 1) has a physical or mental impairment that substantially limits one or more of his life activities, 2) has a record of such impairment, or 3) is regarded as having such impairment. (Id.)(citing 42 U.S.C. § 12102(2)).

Plaintiff's claims here against West Clermont are all grounded in the theory that West Clermont discriminated against him on the basis of alleged perceived disability. Specifically, Plaintiff alleges that West Clermont discontinued his eligibility to work as a substitute teacher because it regarded him as an individual who posed a direct threat of harm to others. Although

Plaintiff alleges that the information that he had allegedly threatened and plotted to kill Geis was false and misleading, he in no way challenges the authenticity of the deposition transcript in which he clearly acknowledged such a plan to kill Geis.

Proclivities towards violence and threats toward co-workers are not protected under the ADA. <u>Hamilton v. Southwestern Bell Telephone Co.</u>, 136 F.3d 1047 (5th Cir. 1998). On the contrary, tendencies towards violence are enough to establish that Plaintiff was not qualified for his position and thus unable to meet the second prong necessary to plead a <u>prima facie</u> case under the ADA. <u>Palmer v. Circuit Court of Cook County Ill.</u>, 117 F.3d 351 (7th Cir. 1997); <u>Williams v. Motorola Inc.</u>, 303 F.3d 1284 (11th Cir. 2002).

In <u>Hamilton</u>, the court determined that the ADA would not protect individuals prone to violence when it stated, "the ADA does not insulate emotional or violent outbursts blamed on an impairment." The court further stated, "[a]n employee who is fired because of outbursts at work directed at fellow employees has no ADA claim." 136 F.3d 1047. In <u>Hamilton</u>, the plaintiff had been diagnosed with Post Traumatic Stress Syndrome after rescuing a woman from drowning (<u>Id</u>.). He displayed violent tendencies at work such as slamming doors, yelling profanities, and hitting one co-worker (<u>Id</u>.). Although he attributed these behaviors to his Post Traumatic Stress Disorder, the court refused to find this proclivity towards violence protected under the ADA and affirmed a grant of summary

judgment denying his ADA claim.

Additionally, two circuit courts have held that violent tendencies are enough to make an employee unqualified for his position. Palmer, 117 F.3d 351 (7th Cir. 1997); Williams, 303 F.3d 1284 (11th Cir. 2002). In Palmer, the Court found that the ADA "does not require an employer to retain a potentially violent employee." 117 F.3d 351. The facts of Palmer were, on their face, similar to the facts of the case at bar. The plaintiff had personality conflicts with her supervisor and her co-workers (Id.). These conflicts caused the plaintiff to become so upset that she verbalized threats, including a threat to kill her supervisor. (Id.). The court held that "[t]he Act [ADA] protects only qualified employees . . . and threatening other employees disqualifies one." (Id.). Similarly, in Williams, the Eleventh Circuit indicated that "engaging in threats of violence," could render an employee unqualified. 303 F.3d at 1291.

In the light of the above case law and common sense, the Court does not find that Plaintiff's allegations of disability discrimination hold up. The Court refuses to find that threats of violence and plots to kill could qualify a person as disabled within the meaning of the ADA, or that an employer cannot terminate an employee who has made threatening remarks or planned to harm a previous employer. Moreover, a school district cannot reasonably be required to accommodate an employee with admitted violent

9

proclivities who works in contact with children.  Plaintiff fails to plead a prima facie case for disability discrimination, and his remarks in the context of the prior litigation can serve as a legitimate basis for Defendant to consider him disqualified as a matter of law.  The Court further finds no "clear public policy" in the Ohio Common law against termination of a potentially violent employee.  Knox v. Neaton Auto Products Mfg., Inc. 375 F.3d 451 (6th Cir. 2004)(citing Kulch v. Structural Fibers Inc., 78 Ohio St. 3d 134 (Ohio 1997)).  For these reasons, the Court finds Defendant West Clermont's Motion to Dismiss well-taken in all respects. Plaintiff has failed to state a claim for relief recognizable by the court under the ADA,  Ohio Revised Code § 4112, or Ohio public policy.  Neither, as Defendant argues, has Plaintiff even pleaded a claim against West Clermont for violation of O.R.C. § 4112. Consequently all of Plaintiff's claims against West Clermont are properly dismissed under Fed. R. Civ. P. 12(b)(6).

**B. Plaintiff's Claims Against Union Township and Kenneth Geis**

Plaintiff alleges numerous claims against Kenneth Geis and Union Township on the grounds that Mr. Geis made "false and misleading" statements to West Clermont Local School District regarding Plaintiff's plan to kill Mr. Geis (doc. 8).  These claims are grounded in theories of retaliation under Title VII, violation of Ohio Rev. Code Chapter 4112 and 42 U.S.C. § 1983, defamation under Ohio common law, and tortious interference with a

10

contract/business relationship (Id.).

As an initial matter, the Court notes that individuals cannot be held personally liable under Title VII, so such claims against Geis are dismissed on this basis. Wathen v. General Electric Company, 115 F.3d 400 (6th Cir. 1997).

### 1. Plaintiff's Claim under Title VII of the Civil Rights Act and Ohio Rev. Code § 4112.99[2]

In order to plead a claim for retaliation under Title VII of the Civil Rights Act, a plaintiff must allege: 1) he took part in activity protected by Title VII, 2) that he was subject to adverse employment action, and 3) that there is a causal connection between the protected activity and the adverse employment action. White v. Burlington Northern & Santa Fe R. Co., (6th Cir. 2004) (citing Jackson v. RKO Bottlers of Toledo Inc., (6th Cir. 1984)). Although Plaintiff adequately alleges participation in an activity protected by Title VII, his participation in the previous lawsuit, and adequately alleges he suffered an adverse employment action, Plaintiff has failed to allege more than the bare legal conclusion that there was a causal connection between the protected activity and his termination.

Plaintiff alleges that Defendant Geis contacted West

---

[2] Ohio Courts analyzing retaliatory discharge claims brought under the Ohio Revised Code, rely on federal case law applicable to Title VII. Carrasco v. NOAMTC Inc., 124 Fed. Appx. 297 (citing Genaro v. Cent Transport, Inc., 84 Ohio St.3d 293 (Ohio 1999).

Clermont to impugn Plaintiff's mental fitness and character and retaliate against Plaintiff for participation in the prior sex discrimination lawsuit (doc. 2). Plaintiff further alleges that as a direct and proximate cause of this contact the District terminated Plaintiff within a matter of days (Id.). Plaintiff and Defendant agree that statements made to Plaintiff's employer were about Plaintiff's plan to kill Mr. Geis (docs 2,4).

First, Plaintiff's retaliation claim fails because the alleged "false statement" that he "threatened and plotted to kill Ken Geis" was not false, as evidenced by the deposition transcript. The plot was vividly articulated and serious. The Court knows of no Title VII precedent where the reporting of a plot to kill, as opposed to contrived stories, could constitute the basis for a retaliation claim on the part of the person who articulated the plot. This court is not convinced that it should create such precedent.

Second, even should the Court construe Plaintiff's complaint to allege bona fide retaliation, the Court finds well-taken Defendant's argument that Plaintiff has failed to adequately allege the requisite causal connection between knowledge of the protected action, his participation in the previous lawsuit, and the adverse employment decision.

Plaintiff has relied on the fact that he was fired "within a matter of days" of Mr. Geis's statements about Plaintiff's plan to

kill Geis, in order to establish the causal connection between his participation in the previous lawsuit and his termination (doc. 8). Temporal proximity between an employer's knowledge of protected activity and an adverse employment action may be sufficient to allege a prima facie case of retaliation, however, that temporal proximity must be "very close." Clark County School District v. Breeden, 532 U.S. 268 (2001).

Here, the application of Clark is difficult as this case involves both a previous employer, Union Township, that obviously knew about the protected activity, and a second employer, West Clermont, which Plaintiff does not allege knew about the previous lawsuit. Plaintiff does not even allege that Defendants Geis and Union Township informed West Clermont about protected activity, but rather alleges they informed West Clermont about his plot to kill Geis. Obviously, a plot to kill an employer is not protected activity under Title VII.

Defendant Union Township, against whom retaliation is alleged, knew about the previous lawsuit, but it did not take the adverse employment action against Plaintiff, as he was not its employee any more. Should the Court generously construe the alleged actions of Geis and Union Township in reporting Plaintiff's plot as actions designed to trigger an adverse employment decision, the link between such "triggering actions" and their knowledge of Plaintiff's protected activity is simply too attenuated in this case

13

to show temporal proximity under <u>Clark</u>.  The span of time between settlement of the prior lawsuit in November 2001 and the statements in late September 2003 is more than 20 months.  Obviously Geis and Union Township knew about the prior lawsuit well before it settled. Under any analysis, this is too long of a time under <u>Clark</u> to support the finding of a causal connection based on temporal proximity between any animus possibly retained by Defendants and any action on their part to affect Plaintiff's employment with West Clermont.

        As argued by Defendants, Plaintiff further fails to allege any other causal connection between his participation in the previous lawsuit and his termination, which is required where temporal proximity is remote.  <u>Carrasco v. NOAMTC Inc.</u>, 124 Fed. Appx. 297, 302-303 (6th Cir. 2004).  Plaintiff offers nothing to support a causal connection, beyond the bare legal conclusion that he suffered retaliation in contravention of Title VII.   For these reasons, the Court dismisses Plaintiff's claims for retaliatory conduct under Title VII and the Ohio Revised Code in accordance with Fed. R. 12(b)(6).

### 2.  Plaintiff's 42 U.S.C. § 1983 Claims

        The Court finds well-taken Defendants' argument that Title VII is the only remedy when a Section 1983 cause of action is based on an alleged Title VII violation.  <u>Day v. Wayne County Board of Auditors</u>, 749 F.2d 1199, 1204 (6th Cir. 1984).   Any First Amendment

14

violation would be premised on Plaintiff's speech, his deposition testimony. Defendants did nothing to impede such speech, they merely reported it. <u>Samad v. Jenkins</u>, 845 F.2d 660, 663 (6th Cir. 1988). Plaintiff's Section 1983 claims, the Court concludes, are merely reconfigured versions of his Title VII retaliation claim. Moreover, Defendants persuasively argue that any Fourteenth Amendment due process claim in this instance would be barred as Plaintiff did not request a name-clearing hearing. <u>Chaney v. Potsdam</u>, 105 Fed.Appx. 18, 24 (6th Cir. 2004). The Court need not therefore reach the question of whether a reasonable official is entitled to qualified immunity for confirming a public announcement that he is the subject of a death threat, as the Court finds no independent basis for a Section 1983 claim in this case apart from the Title VII retaliation allegations. The Court therefore DISMISSES Plaintiff's Section 1983 claims.

### 3. Plaintiff's Claim Against Defendants Geis and Union Township for Defamation

Plaintiff's claims against Defendants Geis and Union Township for Defamation are properly dismissed for the simple reason that Geis's alleged statement or confirmation that he was subject of a death threat was true. The deposition transcript is unambiguous. In Ohio, truth is a complete defense to defamation. <u>Ed Schory & Sons, Inc. v. Soc. Nat'l. Bank</u>, 662 N.E.2d 1074 (Ohio, 1996).

### 4. Plaintiff's Claim against Defendants Geis and Union Township for Tortious Interference with a Business Contract

An individual who, without privilege, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another, or not to perform a contract with another, commits the tort of intentionally interfering with a business relationship.  A & B Abell Elevator Co. v. Columbus/Cent. Ohio Bldg & Constr. Trades Council, 651 N.E. 1283(Ohio 1995). However, "one who intentionally causes a third person not to perform a contract does not do so improperly by giving the third person truthful information." Dryden v. Cincinnati Bell Tel. Co., 734 N.E. 2d 409 (Ohio Ct. App. 1999) (citing Restatement (Second) of Torts § 7720).  As discussed previously, the statements made by Defendant Geis to West Clermont were truthful.  Because the truthfulness of statements is as much a defense to tortious interference as it is to defamation, this claim is also properly dismissed.

## III.  Conclusion

This case presents the Court with a wild set of facts, and even wilder allegations.  Having reviewed the matter, the Court finds Plaintiff's Complaint lacking in merit, and finds persuasive Defendants' arguments that it should be dismissed for failure to state a claim.  Accordingly, the Court GRANTS Defendant West Clermont Local School District's Motion to Dismiss (doc. 3), GRANTS the Motion to Dismiss of Defendants Union Township and Kenneth Geis

(doc. 4), and DISMISSES this matter from the Court's docket.

      SO ORDERED.


Date: June 8, 2006          <u>s/S. Arthur Spiegel         </u>

                                         S. Arthur Spiegel
                                         United States Senior District Judge

17